663 A.2d 1318

George C. DODDS

v.

Patricia S. SHAMER.

No. 9, Sept. Term, 1995.

Court of Appeals of Maryland.

Aug. 29, 1995.

G. Warren Mix (Turnbull, Mix & Farmer, on brief), Towson, for appellant.

Ilene B. Glickman (Richard B. Jacobs, Lentz, Hooper, Jacobs & Blevins, P.A., on brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

RAKER, Judge.

## I.

In this case, we are asked to decide whether a liquor license may be levied upon to satisfy a judgment through a writ of execution. We hold that, in the absence of a statute to the contrary, a liquor license is property subject to levy through a writ of execution.

## II.

On September 11, 1990, Patricia S. Shamer initiated divorce proceedings against George C. Dodds. The Circuit Court for Baltimore County granted the parties an absolute divorce on November 23, 1992, and entered a monetary award in Ms. Shamer's favor for $49,848.22, which was reduced to judgment. After several failed attempts to collect upon the judgment, Ms. Shamer obtained a writ of execution on April 13, 1994, direct-

ing the Sheriff of Baltimore County to seize a Class A Beer, Wine, and Liquor License.[1] The license was issued in the name of George C. Dodds, Inc. t/a Harford Road Liquors.[2] On April 20, 1994, the Sheriff seized this liquor license and removed it from Harford Road Liquors. The Sheriff's office filed its return with the Court on April 22, 1994.[3]

On April 21, 1994, Mr. Dodds petitioned the court to quash the execution. In this motion, he asserted that the liquor license had been improperly seized because the license belonged not to him but to the corporate entity, George C. Dodds, Inc., the license itself had no value because it was only a piece of paper that could not be considered personal property, and the seizure was tantamount to putting him out of

---

**1.** Maryland Rule 2–641 provides the procedures by which a judgment creditor can request the issuance of a writ of execution.

(a) **Generally.**—Upon the written request of a judgment creditor, the clerk of a court where the judgment was entered or is recorded shall issue a writ of execution directing the sheriff to levy upon property of the judgment debtor to satisfy a money judgment. The writ shall contain a notice advising the debtor that federal and state exemptions may be available and that there is a right to move for release of the property from the levy. The request shall be accompanied by instructions to the sheriff that shall specify (1) the judgment debtor's last known address, (2) the judgment and the amount owed under the judgment, (3) the property to be levied upon and its location, and (4) whether the sheriff is to leave the levied property where found, or to exclude others from access to it or use of it, or to remove it from the premises. The judgment creditor may file additional instructions as necessary and appropriate and deliver a copy to the sheriff. More than one writ may be issued on a judgment, but only one satisfaction of a judgment may be had.

**2.** The liquor license does not appear in the record. We accept the undisputed assertion of the Appellant that the license was issued pursuant to an application filed by George C. Dodds and that the name appearing on this license was George C. Dodds, Inc. t/a Harford Road Liquors.

**3.** The record indicates that two further writs of execution on the same liquor license were issued by the court on May 4, 1994 and July 12, 1994. Pursuant to these writs the Sheriff filed returns on May 5, 1994 and November 30, 1994. The first return indicated that the liquor license had again been levied while the second return indicated that the writ was not served.

business. The court denied the motion to quash on April 21, 1994.

On April 25, 1994, Mr. Dodds filed a second motion to quash the execution. He reasserted the same grounds for granting the motion, this time appending corporate documents showing that George C. Dodds, Inc., owned the liquor license.

In response, Ms. Shamer disputed the ownership of the license. She contended that, by statute, liquor licenses could be issued only to individuals, not to corporations, thereby making the license Mr. Dodds' personal asset. She further argued that because Maryland Code (1957, 1994 Repl.Vol.) Art. 2B, § 10–501[4] did not exempt Baltimore County liquor licenses from writs of execution, Mr. Dodds' license was properly seized.

On June 30, 1994, the court denied the second motion to quash. Mr. Dodds appealed to the Court of Special Appeals, and we granted a writ of certiorari on our own motion prior to consideration by the intermediate appellate court.

### III.

The question of whether a liquor license is subject to levy under a writ of execution is one of first impression.[5] In Maryland, a writ of execution may be exercised upon any legal or equitable interest possessed by the judgment debtor in either real or personal property:

> A sheriff or constable to whom any writ of execution is directed may seize and sell the legal or equitable interest of the defendant named in the writ in real or personal property. The sheriff or constable shall execute the writ, conduct

---

4. Unless otherwise indicated, all statutory citations herein are to Maryland Code (1957, 1994 Repl.Vol.) Article 2B.

5. In *M. Lit, Inc. v. Berger,* 225 Md. 241, 250, 170 A.2d 303, 307 (1961),. we declined to decide whether a liquor license had any of the attributes of property that could subject it to the claim of a judgment creditor. There we decided that a liquor license owned by a husband and wife as tenants by the entireties could not be subject to a writ of execution for the debts of only the husband. *Id.* at 249, 170 A.2d at 307.

the sale, and distribute the proceeds pursuant to rules adopted by the Court of Appeals.

Maryland Code (1974, 1995 Repl.Vol.) § 11–501 of the Courts and Judicial Proceedings Article (CJ); *see also* Maryland Rules 2–641 to 2–644. It follows that unless the object to be levied upon can be defined as "property" under this statute, it will not be subject to a writ of execution.

In order to find that a liquor license properly falls under the rubric "property," we must reconcile CJ § 11–501 with § 10–501(a). Section 10–501(a) provides that the grant of a liquor license by a State authorized licensing authority does not confer to the licensee any property rights in the license.

(a) *License not property*—Licenses issued under provisions of this article shall not be regarded as property or as conferring any property rights. All such licenses shall be subject to suspension, restriction or revocation, and to all rules and regulations that may be adopted as herein provided.

Art. 2B, § 10–501(a).

### A.

Article 2B provides no definition for the term "property." Mr. Dodds urges that under § 10–501(a), a liquor license is not property and, therefore, is not properly subject to seizure under a writ of execution. We disagree.

The first sentence of § 10–501(a) provides that licenses issued under Article 2B do not confer any property rights upon the licensee. The second sentence provides the context from which the first sentence derives meaning. Here, the statute provides that all liquor licenses "are subject to" suspension, restriction, revocation or regulation by the State and the State authorized licensing authorities. We conclude that the legislature intended in this provision only to establish that the State's plenary power to control the sale of liquor predominates over any "right" in the liquor license that a licensee might seek to assert against the State or the State authorized liquor licensing authority. *Cf. Dundalk Liquor Co. v. Tawes,*

201 Md. 58, 66, 92 A.2d 560, 563 (1952) (recognizing that the State has plenary power over the sale of alcoholic beverages).

As Mr. Dodds correctly points out, we have stated on several occasions that selling liquor pursuant to a license in Maryland is a privilege, not a constitutional right, and that this privilege is terminable at will. *Dundalk Liquor*, 201 Md. at 65, 92 A.2d at 563 ("The privilege of engaging in the traffic is not a right, but merely a franchise which the state may grant or withhold at will."); *Herman v. Mayor and City Council of Baltimore*, 189 Md. 191, 199, 55 A.2d 491, 496 (1947); *Federico v. Bratten*, 181 Md. 507, 510, 30 A.2d 776, 778 (1943) ("The Act of 1933 expressly provides that a liquor license is not a property right, but a privilege, so that he would not be deprived of a constitutional right by the refusal of the Board or the Bureau [to renew his license]."); *Abramson v. State*, 167 Md. 531, 533–34, 175 A. 593, 594 (1934) ("A liquor license by the terms of this act, is a privilege to be granted, withheld, or withdrawn, on such terms and conditions as the Legislature may prescribe."); *see also Brashears v. Lindenbaum*, 189 Md. 619, 629, 56 A.2d 844, 848 (1948); *Cromwell v. Jackson*, 188 Md. 8, 24–25, 52 A.2d 79, 87 (1947); *State v. Maryland Club*, 105 Md. 585, 595, 66 A. 667, 670 (1907). That possession of a liquor license is a privilege conferring no property rights against the State's power to regulate the sale of alcoholic beverages, however, does not necessarily mean that a liquor license is not property when it becomes the object of adverse claims brought by private individuals against the licensee.

All of our cases interpreting § 10–501(a) and its precursors have involved controversies between licensees and the State. In *Dundalk Liquor*, a liquor licensee sued the Comptroller and Chief of the Alcoholic Beverages Division seeking to enjoin the enforcement of new regulations fixing maximum discounts and requiring the filing of a schedule of prices for the sale of liquor in Baltimore City. 201 Md. at 61, 92 A.2d at 561. Finding that the State had plenary power over the sale of alcoholic beverages under the Twenty–First Amendment and the Commerce Clause, we held that the trial court had

properly dismissed the licensee's lawsuit. 201 Md. at 65–66, 73, 92 A.2d at 563, 567. In *Herman*, over a licensee's protest that his property rights had been violated, we upheld the City of Baltimore's imposition of an emergency liquor excise tax authorized by the General Assembly. 189 Md. at 193–94, 200, 55 A.2d at 494–95, 496. In *Federico*, we held that the Baltimore City Board of Liquor License Commissioners had exceeded its authority by prohibiting the sale of alcohol within 300 feet of a church. 181 Md. at 512, 30 A.2d at 778. Although we found for the licensee, we did not declare that the licensee had any due process property right in the license. Rather, we held that the State, not the City, had the power to prohibit sales of alcoholic beverages in certain areas. *Id.* at 511, 30 A.2d at 778. Finally, in *Abramson*, we affirmed the criminal conviction of a licensee who had stored untaxed liquor on his premises after we found that the State's ultimate power to suspend or withdraw a liquor license obliged the licensee to follow the State's regulations. 167 Md. at 533–34, 175 A. at 594.

These cases stand for the proposition that a liquor licensee possesses no constitutionally protected property right that would restrain the State or the State authorized licensing authority from exercising its plenary power over the licensee. In this case, the conflict is between two private individuals; the liquor licensing authority is not involved. Therefore, these cases do not control our decision.

Nothing within the language of or under the case law interpreting § 10–501(a) precludes us from finding that a liquor license is "property" that could be subject to execution.[6]

---

6. Other jurisdictions have concluded that where a liquor license is not property *vis a vis* the state, it may be property as between private individuals. *See Hooper v. Duncan*, 95 Ariz. 305, 389 P.2d 706, 708 (1964) ("As between the licensee and third persons, a liquor license is a property right with unique value. But as between the licensee and the state, a liquor license is merely a privilege subject to the police power of the state; it is not a 'property right' or a 'contract' in the legal or constitutional sense of those terms.") (citations omitted), *app. dismissed*, 379 U.S. 27, 85 S.Ct. 186, 13 L.Ed.2d 173 (1964); *Belle'isle v. Hempy*, 206 Cal.App.2d 14, 23 Cal.Rptr. 599, 600 (Cal.Dist.Ct.App.1962) (recog-

This conclusion, however, raises the question whether there is an inherent contradiction in finding that a liquor license is "property" under CJ § 11–501 but not "property" under § 10–501. We find there is not.[7]

## B.

We have recognized that property is a term that has broad and comprehensive significance; it embraces "everything which has exchangeable value or goes to make up a man's wealth—every interest or estate which the law regards of sufficient value for judicial recognition." *Diffendall v. Diffendall,* 239 Md. 32, 36, 209 A.2d 914, 915 (1964); *accord Deering v. Deering,* 292 Md. 115, 125, 437 A.2d 883, 889 (1981); *see also Samet v. Farmers' & Merchants' Nat'l Bank of*

---

nizing that licensee had a property right in the license against other individuals but none against the licensing authority); *Weller v. Hopper,* 85 Idaho 386, 379 P.2d 792, 797 (1963); *Ladt v. Arnold,* 583 S.W.2d 702, 703–04 (Ky.Ct.App.), *reh'g denied,* (1979) (finding that although a liquor license was not property as between the issuing authority and the licensee, it was nonetheless property as between private individuals); *Arrowhead Estates, Inc. v. Boston Licensing Bd.,* 15 Mass.App. 629, 447 N.E.2d 675, 675, 676 (1983) (finding license attachable by federal government as property despite statute providing that license was not property with respect to the licensing authority); *Nelson v. Naranjo,* 74 N.M. 502, 395 P.2d 228, 229 (1964) (finding a property right in a liquor license between holder and third parties but not between holder and the state licensing authority); *Pennsylvania Liquor Control Bd. v. Leonardziak,* 210 Pa.Super. 511, 233 A.2d 606, 607 (1967) (stating that while possession of a liquor license is merely a privilege *vis a vis* the state, the fact that the license is transferable means it is a property right); *Lane v. Hewgley,* 155 S.W. 348, 350 (Tex.Ct.Civ.App.1913) (finding that as between the licensee and the state, a liquor license is not property, but as between private individuals a liquor license is property).

7. In *Boss Co. v. Commissioners of Atlantic City,* 40 N.J. 379, 192 A.2d 584, 588 (1963), the New Jersey Supreme Court found that a liquor license was property subject to an Internal Revenue Service tax lien despite a New Jersey statute expressly stating that a liquor license was not property subject to attachment. *See also In re Quaker Room,* 90 F.Supp. 758, 761 (S.D.Cal.1950) (finding that, under California law, while a liquor license was a "mere permit" and not property right within the due process clause, it did constitute property as the term is used in the Bankruptcy Act); *supra,* note 6.

*Baltimore,* 247 F. 669 (4th Cir.1917). Our notions of what constitutes property "may reasonably be construed to include obligations, rights and other intangibles as well as physical things." *Bouse v. Hutzler,* 180 Md. 682, 686, 26 A.2d 767, 769 (1942) (citing *Fidelity & Deposit Co. v. Arenz,* 290 U.S. 66, 54 S.Ct. 16, 78 L.Ed. 176 (1933)).

What we construe to be "property" is not at all times and under all circumstances uniform. For example, we have held that "goodwill," in the form of a product trade-mark, brand, or copyright, is a "valuable property right," but we have also held that "goodwill," in the form of a solo practicing attorney's reputation, is not "marital property." *Compare Schill v. Remington Putnam Co.,* 179 Md. 83, 88, 17 A.2d 175, 178 (1941) *with Prahinski v. Prahinski,* 321 Md. 227, 239, 582 A.2d 784, 790 (1990). Similarly, we have held that an unliquidated personal injury claim, while having attributes of personal property, is nonetheless not encompassed within the statutory definition of marital property. *Unkle v. Unkle,* 305 Md. 587, 596, 505 A.2d 849, 854 (1986) (finding that an unliquidated personal injury claim does not fit within the legislatively intended definition of marital property); *see also Hoffman Chevrolet, Inc. v. Washington County Nat'l Savings Bank,* 297 Md. 691, 701 n. 4, 467 A.2d 758, 764 n. 4 (1983) (noting that choses in action are property).

When we seek to determine whether something is property, we must look toward the "basic characteristics of property" to assess whether the thing we are scrutinizing falls within them. *See Archer v. Archer,* 303 Md. 347, 357, 493 A.2d 1074, 1079–80 (1985) (finding that because a medical degree/license was an intellectual attainment, personal to the holder, that could not be sold, transferred, pledged, or inherited, that it had no value on the open market and, therefore, was not marital property). A liquor license will be "property" if we find that it exhibits the attributes of property.

Mr. Dodds attempts to draw a distinction between the paper license issued by the Liquor Control Board and the commerce in liquor carried out pursuant to the license. By drawing this

distinction, Mr. Dodds attempts to convince us that it is not the license that has value, but, rather, only the business of selling liquor that has value. Absent value, he argues, a liquor license cannot be property. We find, however, that Mr. Dodds draws a distinction without a difference.

A liquor license is more than just a piece of paper. It symbolizes the otherwise intangible franchise that is the valuable privilege to sell liquor. *See Quinnipiac Brewing Co. v. Hackbarth,* 74 Conn. 392, 50 A. 1023, 1024 (1902) (disabusing the distinction between the license certificate and the valuable commerce in liquor by finding that the license certificate was the recognized token and representation of the valuable right to sell liquor); *see also Rowe v. Colpoys,* 78 U.S.App.D.C. 75, 137 F.2d 249, 251 (D.C.Cir.), *cert. denied,* 320 U.S. 783, 64 S.Ct. 190, 88 L.Ed. 470 (1943); *Jubinville v. Jubinville,* 313 Mass. 103, 46 N.E.2d 533, 536 (1943) (recognizing that the business of a package store cannot be conducted without a license and that for purchasers of the license the value of the license to them is greater than the fee).

In Maryland, a liquor license is generally transferable, saleable, or assignable by the holder or the holder's receiver or trustee.[8] Art. 2B, § 10–503(a). Further, the executor of a

---

8. Section 10–503 provides certain county specific prerequisites to and restrictions on the transferability, salability, and assignability of liquor licenses. Primarily, these prerequisites involve the payment of fees, prior payment of state and local taxes, and the approval of the applicable licensing authority. In no Maryland jurisdiction is the transfer, sale, or assignment of a liquor license expressly prohibited in all circumstances by § 10–503.

The relevant portions of Art. 2B, § 10–503 that apply in Baltimore County are as follows:
(a) *In general.*—(1) In this section, "board" means the board of license commissioners or liquor control board, as the case may be, of the county or Baltimore City.

(2) Any holder of a license under this article, including a receiver or trustee for the benefit of creditors, may be permitted to transfer the holder's place of business to some other location or sell or assign the license and transfer the holder's stock in trade to another person, but only if:

(i) An application for the transfer or sale has been made;

licensee's estate has an executor's right to obtain and use the license for up to eighteen months for the cost of one dollar.

---

(ii) All retail sales, amusement, admission, and withholding taxes have been paid to the Comptroller of the Treasury of the State;

(iii) A bulk transfer permit is obtained if the stock of alcoholic beverages is to be transferred whether by sale, gift, inheritance, assignment, or otherwise, and irrespective of whether or not consideration is paid; and

(iv) The new location or assignee is approved as in the case of an original application for such a license.

(3) A transfer or assignment, when made, shall be endorsed upon the license by the license issuing authority upon payment of a fee of $20 in addition to the costs of publication and notice, which shall be paid to the local collecting agent at the time of the filing of the application for the transfer or sale. This section permits the transfer of location and the assignment of license in the same application.

(4) A board may not permit the transfer of an alcoholic beverages license until the transferor has complied with the Bulk Transfers Act, Commercial Law Article, Title 6, and has certified such compliance, by affidavit, to the board.

\*　　\*　　\*　　\*　　\*　　\*

(e) *Baltimore County.*—(1) This subsection applies only in Baltimore County.

(2) Except for the transfer provided for in paragraph (3) of this subsection, all classes of alcoholic beverages licenses shall be transferred as provided for in subsection (a) of this section.

(3) The Board, after a hearing, may grant a transfer of a Class B beer, wine and liquor (on-sale) hotel and restaurant license to a Class D beer, wine and liquor (on-sale) license if, before the annual renewal of the license, the holder:

(i) Is cited by the Board for violating the license restriction concerning the percent of food sold versus the percent of alcoholic beverages sold; or

(ii) Because of hardship or economic conditions, knows that this restriction is being violated on the licensed premises and notifies the Board in writing of this violation and the reasons for requesting the transfer.

(4) A license may not be transferred in accordance with the provisions of paragraph (3) of this subsection unless after the hearing the Board finds that the transfer is in the best interest, health, safety and welfare of the neighborhood in which the license transfer is to be granted.

(5) This subsection does not apply to the exceptions from the population requirements provided for in § 9–107(a)(3), (4), and (5) of this article.

(6) The Board may not permit the transfer of an alcoholic beverages license within its jurisdiction unless there is presented to the Board a receipt or certificate from the Director of Finance showing that there are no unpaid taxes on the merchandise, fixtures, or stock of the transferor due to Baltimore County or the State of Maryland.

Art. 2B, § 10–506.[9] These rights also imbue a liquor license with value.

Moreover, commerce in liquor is illegal in Maryland without a license, and those who sell liquor without a license are subject to criminal prosecution. Art. 2B, § 1–201;[10] *see Dail v. Price*, 184 Md. 140, 141, 40 A.2d 334, 335 (1944) (acknowledging that the sale of alcoholic beverages was punished by a fine of $250 in this case); *Hayes v. State*, 171 Md. 94, 97, 188 A. 24, 24–25 (1936) (finding that the licensing laws are prohibitory as well as regulatory). This limited protection from criminal prosecution is another valuable incident of the ownership of a liquor license. Together, the characteristics of the executor's right, salability, assignability, the protection from arbitrary prosecution, and the tangible representation of the privilege to engage in the commerce of alcoholic beverages imbue liquor licenses with sufficient attributes of property for us to hold that a liquor license is property under CJ § 11–501.

## C.

■ We now analyze the remainder of § 10–501 to determine whether any other provision of the statute prevents us

---

**9.** In relevant part, Art. 2B, § 10–506 reads as follows:

(a) *Generally.*—Upon the death of the holder of any license issued under this article other than Class E, Class F and Class G licenses, the license shall expire. However, upon application to the Comptroller or local licensing board, as the case may be, that granted the license, and upon the payment of a fee of one dollar ($1.00), made by the executors or administrators of the deceased licensee to the Comptroller or local collecting agent, as the case may be, a certificate of permission may be granted for the continuation of the business in the name of the executors or administrators for the benefit of the estate of the deceased.

**10.** The relevant portion of Art. 2B, § 1–201 reads as follows:

(2) A person may not sell, or suffer to be sold, or for the purpose of sale, transport, buy, possess, keep or suffer to be transported, bought, possessed or kept in any vehicle, vessel or aircraft or on any premises or under the person's charge or control any alcoholic beverages unless otherwise provided for in this article or the Tax–General Article.

from finding liquor licenses subject to writs of execution.[11]
Sub-sections (b)(2), (c), (d)(2), and (e)(1) explicitly state that

---

11. The complete text of Art 2B., § 10–501 reads as follows:

(a) *License not property.*—Licenses issued under provisions of this article shall not be regarded as property or as conferring any property rights. All such licenses shall be subject to suspension, restriction or revocation, and to all rules and regulations that may be adopted as herein provided.

(b) *Prince George's County.*—(1) This subsection applies only in Prince George's County.

(2) Licenses issued under this article are not subject to writs of execution by a judgment creditor of a licensee nor are the licenses subject to a distraint for rent.

(3) The Board of License Commissioners may impose restrictions upon individual licensees to enable the Board to discharge the duties imposed upon it by this article if:

(i) The Board develops written restrictions that are reasonable, clear, and ascertainable; and

(ii) The Board develops written rules and regulations for the enforcement of the restrictions that comply with the due process:

1. Providing notice; and
2. Providing a hearing.

(4)(i) A licensee may create a security interest in its license in favor of a landlord or any creditor of the licensee. The security interest shall be perfected in accordance with the Commercial Law Article of the Code.

(ii) The licensee shall deliver a copy of the underlying security agreement that is signed by or on behalf of the individual or entity that holds the license.

(iii) Any transfer of a license pursuant to a security agreement shall be subject to approval by the Board in the same manner as is any other license transfer except that the written consent and cooperation of the existing licensee is not required.

(c) *Worcester County.*—In Worcester County licenses issued under this article are not subject to writs of execution by a judgment creditor of a licensee nor are these licenses subject to a distraint for rent.

(d) *Howard County.*—In Howard County licenses issued under provisions of this article may not be:

(1) Regarded as property or as conferring any property rights;

(2) Subject to writs of execution by a judgment creditor of a licensee; or

(3) Subject to a distraint for rent.

(e) *Harford County.*—In Harford County, licenses issued under provisions of this article may not be subject to:

(1) Writs of execution by a judgment creditor of a licensee;

(2) A distraint for rent; or

(3) Sale or transfer per se, unless the license accompanies the business to which the license was issued.

liquor licenses are not subject to writs of execution in Prince George's County, Worcester County, Howard County, and Harford County. In these four counties, the law is clear. In this case, however, the liquor license was issued in Baltimore County, a county not expressly covered by a similar statutory provision. Nonetheless, Mr. Dodds argues that the statutory provisions applying to Prince George's, Worcester, Howard, and Harford Counties also apply throughout the State, despite the lack of similar provisions covering the other counties. We find that Mr. Dodds' argument lacks merit. We will not infer from the absence of explicit provisions that the statute extends the rule in the four named counties to the entire State. *See Slate v. Zitomer*, 275 Md. 534, 540, 341 A.2d 789, 793 (1975) ("[C]ourts may not 'attempt under the guise of construction, to supply omissions or remedy possible defects in the statute, or to insert exceptions not made by the Legislature.' ") (citing *Amalgamated Casualty Ins. Co. v. Helms*, 239 Md. 529, 535–36, 212 A.2d 311, 316 (1965)), *cert. denied, Gasperich v. Church*, 423 U.S. 1076, 96 S.Ct. 862, 47 L.Ed.2d 87 (1976). Had the General Assembly intended to exempt liquor licenses from writs of execution throughout the State, it could have done so just as it did for the four named counties. Following the doctrine of *inclusio unius est exclusio alterius*,[12] we find that by specifically exempting liquor licenses from execution in Prince George's, Worcester, Howard, and Harford Counties the General Assembly did not intend also to exempt liquor licenses from execution in the rest of the State. *American Security & Trust Co. v. New Amsterdam Casualty Co.*, 246 Md. 36, 41, 227 A.2d 214, 216–17 (1967) (concluding that because the Legislature had not included mortgagees within the terms of a statute that they were purposely excluded from the statute's reach).

Because the question whether a liquor license is subject to a writ of execution is one of first impression in Maryland, we find it useful to review the law from other states that have

---

12. "The inclusion of one is the exclusion of another." *Black's Law Dictionary*, 687 (5th ed.).

addressed the issue. The legislatures of several states have followed a path similar to that taken by the Maryland General Assembly with respect to Prince George's, Worcester, Howard, and Harford Counties, and they have declared by statute that liquor licenses are not subject to writs of execution. *See* Alaska Statutes § 09.38.015(a)(7); Connecticut General Statutes § 30–14(a), Idaho § 23–915; Illinois Revised Statutes ch. 235, ¶ 5/6–1, Iowa Code § 123.38; Kansas Statutes § 41–2629; Nebraska Revised Statutes § 53–149; New Jersey Statutes § 33:1–26; Oklahoma Statutes tit. 37, § 532; Oregon Revised Statutes § 471.301(1)(i); Texas Alco.Bev.Code §§ 11.03, 61.02; Wyoming Statutes § 12–4–604. In one state, New Mexico, the legislature has specifically provided that liquor licenses are subject to writs of execution. New Mexico Statutes § 60–6A–19.

Among the states with no relevant statute, we have found eight jurisdictions in which either a court or the attorney general has addressed the question of whether a liquor license is subject to a writ of execution. Three have stated that liquor licenses are not subject to writs of execution. In *Abraham v. Fioramonte*, 158 Ohio St. 213, 107 N.E.2d 321, 327–28 (1952), the Ohio Supreme Court determined that because a liquor license was transferable only with the written permission of the state and was not property under prior case law, it was not subject to levy under a writ of execution. The Pennsylvania Supreme Court decided, without analysis, in *1412 Spruce, Inc. v. Commonwealth*, 504 Pa. 394, 474 A.2d 280, 283 (1984), that because by statute a liquor license was not property, it was not subject to attachment or execution under the state's rules of civil procedure. New York's Attorney General concluded that a liquor license is not subject to execution, relying on statutes stating that the licenses were non-transferable, non-assignable, and not property. 1966 Op. Att'y Gen. 75, 75 (N.Y.).

Following what we believe to be the more persuasive line of reasoning, five jurisdictions have found that liquor licenses are subject to writs of execution. In *Rowe v. Colpoys*, 78 U.S.App.D.C. 75, 77, 137 F.2d 249, 251 (D.C.Cir.), *cert. denied,*

320 U.S. 783, 64 S.Ct. 190, 88 L.Ed. 470 (1943), the court decided that a liquor license was transferable and, independent of its transferability, imbued with value as the symbol of commerce in alcoholic beverage distribution. Therefore, the license was a property right subject to execution. In *Coney v. First State Bank of Miami*, 405 So.2d 257, 259 (Fla.Dist.Ct. App.1981) (citing *House v. Cotton*, 52 So.2d 340 (Fla.1951)), the court found that a liquor license was "quite clearly property of value" and held that it, "like any other non-exempt property, may be levied upon and sold to satisfy a judgment." *Springsteen v. Meadows, Inc.*, 534 F.Supp. 504, 507 (D.Mass. 1982), held that under Massachusetts law a liquor license was subject to a writ of execution because even though the licensee did not have "an irrevocable property right in the license," the license, nonetheless, was "a valuable asset upon which levy can be made." *See also Arrowhead Estates v. Boston Licensing Bd.*, 15 Mass.App. 629, 447 N.E.2d 675, 676, 677 (1983) (citing *Springsteen* with approval and holding that liquor licenses are attachable pursuant to federal tax liens). In Montana, the Supreme Court held that a "retail liquor license is saleable and is personal property of value and subject to attachment." *Stallinger v. Goss*, 121 Mont. 437, 193 P.2d 810, 810 (1948). By statute, Montana has provided that any property subject to attachment is likewise subject to execution. Montana Code Ann. § 25–13–501. California's Attorney General similarly concluded that because California courts had found liquor licenses to be property in a variety of circumstances, a liquor license was subject to execution under the California Rules of Civil Procedure. 33 Op. Att'y Gen. 140, 140–42 (Cal.1959).

Maryland's Attorney General has also opined that a liquor license is property subject to execution. 43 Op. Att'y Gen. 83, 84 (Md.1958). The Attorney General noted, however, that although the license was subject to execution, final transfer of the license would still be subject to approval of the appropriate licensing authority. *Id.* at 84–85. While not binding on this Court, the opinion of the Attorney General is entitled to careful consideration. *Montgomery County v. At-*

*lantic Guns, Inc.,* 302 Md. 540, 548, 489 A.2d 1114, 1118 (1985). We agree with the Attorney General's opinion.

In view of our findings above, we hold that a liquor license is subject to a writ of execution, absent a statute to the contrary. Under § 10–501(a), a liquor license is not property as between the licensing authority and the license holder, but it has sufficient attributes of property to be considered property as between private individuals. As property, therefore, a liquor license may be subject to a writ of execution. The statutory exemptions from execution provided in § 10–501 apply only within the specific jurisdictions named.

### IV.

Mr. Dodds has also contended that the liquor license seized from Harford Road Liquors was not his property and, therefore, could not be executed upon to satisfy his personal debt. The record of the proceedings in the circuit court is insufficient to permit us to reach a determination on this contention. Accordingly, we remand to the circuit court for proceedings consistent with the Maryland Rules to determine the ownership of the license.

*JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY VACATED. CASE REMANDED TO THAT COURT WITHOUT AFFIRMANCE OR REVERSAL FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT TO BE PAID BY APPELLANT.*